Opinion issued May 14, 2013



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00699-CV

———————————

**BRETT T. COOKE, AS TRUSTEE FOR THE BRETT T. COOKE REVOCABLE TRUST, Appellant**

**V.**

**THOMAS E. MORRISON, JR. AND KATHY R. MORRISON, Appellees**

**&**

**THOMAS E. MORRISON, JR. AND KATHY R. MORRISON, Appellants**

**V.**

**BRETT T. COOKE, AS TRUSTEE FOR THE BRETT T. COOKE REVOCABLE TRUST, Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2007-45864**

---

# OPINION

Spurred by a property dispute with neighboring landowners, Brett T. Cooke, as trustee of The Brett T. Cooke Revocable Living Trust, filed a trespass to try title suit against the Thomas E. and Kathy R. Morrison in order to (1) adjudicate title to a narrow strip of land, and (2) determine whether the Trust had acquired either title to, or an easement for, the portion of the roof eaves that extend over the Morrisons' property, and the portion of Cooke/Trust's sewer line buried under the Morrisons' backyard. The Morrisons counterclaimed against the Trust and filed a third-party action against Cooke, individually, seeking a declaratory judgment and removal of the eaves and sewer line as encroachments violative of the restrictive covenants. After a bench trial, the court's final judgment adjudicated the location of the property line and ordered the Trust to remove the offending eaves and sewer line. Cooke, the Trust, and the Morrisons all challenge various aspects of the final judgment.

We reverse those portions of the trial court's judgment that (1) order the Trust "take nothing" on its claims, (2) declare the roof eaves and sewer line as encroachments upon the Morrisons' property in violation of the restrictive covenants, (3) require removal of the portions of the eaves and sewer line from the Morrisons' property, and (3) award attorney's fees and costs to the Morrisons.

2

We render judgment that (1) the Trust holds title to the .2 foot strip of land immediately to the west of the southwestern wall of the Cooke/Trust house on Lot 2, as depicted on the Weisser Survey, (2) the Trust has a prescriptive easement both for the sewer line that services the Cooke/Trust house on Lot 2 and runs buried beneath the Morrisons' property, and for those portions of roof eaves that overhang the Morrisons' property and (3) the Trust has an easement by necessity upon the Morrisons' property for the repair and maintenance of the exterior of the home on the Trust's property (including the roof and eaves) and the sewer line serving the Trust's property, and (4) the Morrisons take nothing on their claims.

We also remand the case to the trial court for the limited purpose of (1) determining the scope and specific location of the Trust's prescriptive easement and easement by necessity across the Morrisons' property, and (2) entering a valid judgment conveying said easements to the Trust in accordance with this May 7, 2013 memorandum opinion.

## Background

From November 1997 to July 2008, Cooke and the Morrisons were next-door neighbors. Cooke resided on lot 2 of block 5 of Pines of Atascocita Section 2 ("Lot 2") that was owned by the Trust, and the Morrisons owned and resided on lot 1 of block 5 of Pines of Atascocita Section 2 ("Lot 1").

3

Previously owned by Gibraltar Savings Association, as successor-in-interest to ELRO-Atascocita, Inc. (the developer), both Lots are subject to restrictive covenants governing building location and require approval of building plans by an architectural control committee. Gibraltar deeded the lots to J. Stiles, Inc., the builder, on July 22, 1981, and both homes were substantially completed by the following November.

The Morrisons purchased their home on Lot 1 from builder Stiles, Inc. on December 30, 1981, and have lived there since. On July 22, 1982, Stiles, Inc. deeded Lot 2 to Dudley W. Stiles, who then deeded the property to Jackson C. and Terri Lee Taylor on March 30, 1983. On January 13, 1986, the Taylors deeded Lot 2 to Cooke's grandparents, Thomas W. and Osie M. Cooke. On April 7, 1995, Thomas and Osie Cooke transferred Lot 2 to the Cooke Family Living Trust, with Thomas Cooke as trustee. After Thomas and Osie Cooke passed away, the Cooke Family Living Trust deeded Lot 2 by recorded General Warranty Deed dated November 19, 1997, to the Brett T. Cooke Revocable Living Trust dated August 29, 1995. Both the April 7, 1985 deed and the November 19, 1997 deed were recorded on December 2, 1997. All of the Lot 2 deeds include a habendum clause which purports to convey Lot 2, "together with all and singular the rights and appurtenances thereto in anywise belonging."

4

The house on Lot 2 is positioned such that its southwest exterior wall is close to the property line it shares with Lot 1—the parties dispute whether the house is actually on the line or two-tenths of a foot east of the line. The roof eaves of this southwestern part of the house on Lot 2 extend 1.5 feet beyond the exterior brick wall. Further, Stiles, Inc. plumbed the sewer line for the house on Lot 2 to exit the house on the southwest side, run under the backyard of Lot 1, and ultimately tie in to utility-owned piping in the utility easement at the rear of Lot 1. The sewer line includes a clean-out fitting located on Lot 1 about two feet from the southwest exterior brick wall of the Lot 2 house and protrudes about five inches above the ground. There is no recorded easement for the eaves or sewer line.

After several disputes over yard maintenance, Cooke, as trustee on behalf of the Trust, filed a trespass to try title suit against the Morrisons, who counterclaimed and filed a third-party petition against Cooke, individually.

The Morrisons also alleged various tort claims against both the Trust and Cooke (i.e., trespass to real property, negligence) and sought attorney's fees and exemplary damages from both the Trust and Cooke, pursuant to the Declaratory Judgment Act (fees), section 5.006 of the Property Code (fees), "Attorney-Fees-As-Damages-Theory" (fees), section 16.034 of the Civil Practice and Remedies Code (fees), and chapter 41 of the Civil Practice and Remedies Code (exemplary damages).

The first bench trial, held July 13, 2009, resulted in a "take-nothing" judgment for both parties. The trial court granted a motion for new trial, which was tried to the court on September 27, 2010.

The second trial's first witness was court-appointed surveyor, Walter Sass, who testified that his June 2010 survey[1] found the disputed property line runs parallel to the southwestern wall of the Lot 2 residence, which is located two-tenths (0.2) of a foot east of the property line, and wholly within the boundaries of Lot 2. Sass also testified that the roof eaves of the Lot 2 residence extend 1.5 feet from the structure's exterior wall, and thus, overhang the Morrisons' property by 1.3 feet.

The Weisser Survey, limited to above-ground appurtenances, does not indicate the location of the sewer line or other underground utilities. When asked if he could determine the path of an underground sewer line based on the location of an above-ground plumbing clean-out, he noted the location of the underground line could not be pinpointed because it could turn in another direction immediately after the clean-out. Sass further testified that the Morrisons' backyard is enclosed by a fence that separates Lots 1 and 2. According to Sass, when a fence is on, or "very close" to, a property line, the survey will show it on the property line. In his opinion, the fence separating Lots 1 and 2 was "very close" to the property line.

---

[1] The survey, which is referred to as the Weisser Survey, was admitted into evidence.

With respect to his trespass to try title claim, Cooke testified that the 0.2 foot strip of land immediately adjacent to his home belongs to the Trust because the Weisser Survey shows the house to be wholly within Lot 2. Cooke testified that the Trust has superior title to Lot 2 from a common source since both lots were originally owned by the subdivisions' developer, ELRO-Atascocita, prior to its conveyance of both lots to Gibraltar, and the subsequent conveyances to, ultimately, the Morrisons and the Trust (following the death of Cooke's grandparents). Deeds documenting these conveyances, as well as all others included in the chain of title, were admitted into evidence.

When asked if the Morrisons had actual knowledge that the eaves encroached on their property, Cooke referred to photographs of the home that clearly showed the white plastic plumbing clean-outs several inches high in the Morrisons' fenced-in backyard, the eaves hanging over the fence separating Lot 2 from the Morrisons' backyard and the southwestern wall of his house fenced in by the Morrison's backyard fence. Cooke testified that while the Morrisons never gave permission for the encroachments, both he and his grandparents use and benefit from the roof eaves and sewer line was continuous, exclusive and peaceable from 1986 when his grandparents purchased the home, noting that there had been no prior trespass to try title suit or adverse possession.

Cooke further testified that even were the court to determine that he did not have title to, or an easement for, the eaves and sewer line, maintenance of his property required access to the Morrisons' property. On cross-examination, Cooke testified that there had been prior occasions on which the Morrisons allowed him into their backyard to perform maintenance on his property. He also clarified that he was claiming adverse possession of, or an easement for, the 1.3 foot portion of the eaves overhanging the Morrison property and the portion of the sewer line running underneath the Morrisons' backyard.

Thomas Morrison, a professional engineer, testified that, in his opinion, it would be neither difficult nor prohibitively expensive for Cooke to remove the encroaching eaves. Morrison also testified that one of the monuments Sass relied upon may have been moved in the months preceding the survey. Morrisons' attorney testified in support of the attorney's fees they were claiming.

The trial court signed finding of facts and conclusions of law on April 14, 2011, and, on June 1, 2011, a final judgment declaring the boundary line between the two properties was as depicted in the Weisser Survey and the eaves and sewer line encroached upon the Morrisons' property in violation of the applicable restrictive covenants. The judgment orders the Trust to remove the encroachments within 180 days, awards the Morrisons' court costs and $2,500 in attorney's fees against the Trust, and declares that the Trust "take nothing" on its claims.

Significantly, the final judgment contains a Mother Hubbard clause that states, "This judgment is final, disposes of all claims and all parties, and is appealable." Neither side filed a motion to reform the judgment. Although Cooke and the Trust filed a motion for new trial, they did not complain about any specific inadequacies with respect to the judgment.

### Standard of Review

In an appeal of a judgment rendered after a bench trial, a trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

In conducting a legal-sufficiency review of the evidence, we must consider all of the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In determining whether legally-sufficient evidence supports the finding under review, we must consider evidence favorable to the finding, if a reasonable fact finder could consider it, and disregard evidence contrary to the finding, unless a reasonable fact finder could not disregard it. *Id.* at 827; *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

9

When a party attacks the legal sufficiency of an adverse finding on which he has the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We will sustain a legal-sufficiency challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

In reviewing a factual-sufficiency challenge, we consider and weigh all of the evidence supporting and contradicting the challenged finding and set aside the finding only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *see Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). When a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof at trial, the party must demonstrate that the trial court's finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 242; *Grider v. Mike O'Brien, P.C.*, 260 S.W.3d 49, 57 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

10

We review a trial court's conclusions of law de novo, and we will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *BMC Software*, 83 S.W.3d at 794; *Holloway–Houston, Inc. v. Gulf Coast Bank & Trust Co.*, 224 S.W.3d 353, 357 (Tex. App.—Houston [1st Dist.] 2006, no pet.). If we determine that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *BMC Software*, 83 S.W.3d at 794.

Finally, we note that the trial court acts as fact finder in a bench trial and is the sole judge of the credibility of witnesses. *See Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981); *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

## Discussion

### I. The Morrisons' Appeal

In three issues on appeal, the Morrisons contend that (1) this Court should declare Harris County Local Rule 3.2.2 invalid because it impermissibly shifts the burden of proof, (2) the trial court's award of $2,500 in attorney's fees was

11

arbitrary or unreasonable, and (3) the trial court erred in failing to address the trellis in the final judgment.[2] All three issues are inadequately briefed. Except for the citation to the local rule that they claim is invalid, the Morrisons' briefing is devoid of any case law or other legal authority. Other than general references and citations to materials included in their appendix, the Morrisons also fail to provide any specific citations to the record.[3]

In light of these briefing inadequacies, the Morrisons have preserved nothing for our review. *See* TEX. R. APP. P. 38.1(h) (appellate brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to record); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (appellate court has discretion to waive points of error which are inadequately briefed).[4]

We overrule all of the Morrisons' issues on appeal.

---

[2]   Although the Morrisons raise this issue in their response to Cooke's appellant's brief, and not in the Morrisons' appellants' brief, we will, nevertheless, treat it as though they did.

[3]   "See Record (citations omitted)" does not suffice.

[4]   We note that even if the Morrisons' second and third issues were adequately briefed, the Morrisons would still not be entitled to relief because they did not file any post-trial motions complaining about the amount of attorney's fees awarded or the omission of the trellis from the final judgment.

## II. Claims Against Cooke, Individually

Cooke is appealing the judgment as trustee and in his individual capacity. As previously discussed, the final judgment does not award the Morrisons anything on their third-party claims against Cooke, individually. Thus, the judgment, which "disposes of all claims and all parties," effectively denied the Morrisons' claims against Cooke, individually. *Cf. Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001) (stating judgment is final for purposes of appeal if it disposes of all pending parties and claims). Accordingly, we will limit our discussion of Cooke's issues to those affecting the Trust.

## III. Trespass to Try Title – Narrow Strip of Land Separating Structure on Lot 2 from Property Line

Cooke, as trustee, filed suit against the Morrisons to, among other things, adjudicate title to a narrow strip of land adjacent to the home on Lot 2. He argues that the property line between Lots 1 and 2 is 0.2 feet from the exterior brick wall of his home, and therefore, the narrow strip of land between the home and the property line belongs to the Trust. In their live pleading, the Morrisons argued that the exterior wall of the Lot 2 home is located on the property line.

On appeal, Cooke argues that the Trust proved its trespass to try title case as a matter of law. Although Cooke acknowledges that the trial court did not expressly find that the Trust had title to the narrow strip of land, Cooke argues that in light of the trial court's declaration that the boundary is as depicted on the

13

Weisser Survey, this is nevertheless the effect of the judgment. Cooke's argument, however, ignores the fact that the judgment also expressly orders that the Trust "take nothing" in this suit. The trial court's order that the Trust "take nothing" necessarily means that the court ruled *against* the Trust with respect to its trespass to try title claim. *See Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982) (stating trial court should enter "take nothing" judgment if plaintiff in trespass to try title suit fails to establish superior title); *Halbert v. Green*, 156 Tex. 223, 288, 293 S.W.2d 848, 851 (1956) (stating "take nothing" judgment in trespass to try title suit operates to divest plaintiff of all its title to its interest in lands in controversy and to vest same in defendant).

We construe Cooke's argument that the Trust proved its title to the narrow strip of land as a matter of law to be a challenge to the legal-sufficiency of the evidence supporting the "take nothing" judgment entered against the Trust. Here, the trial court expressly found that the Weisser Survey "accurately represents the platted boundaries" separating Lots 1 and 2. Although the copy of the Weisser Survey included in the record is difficult to read and appears to be missing some characters, it indicates that the one story brick residence on Lot 2 is "0 2' northeast o Property L ne." This comports with the testimony of Sass, the court-appointed surveyor who prepared the Weisser Survey. Sass testified that he determined that

14

the southwestern wall of the Lot 2 residence was 0.2 feet northeast of the property line.

Because the evidence, namely, the Weisser Survey relied upon by the trial court, conclusively establishes that the 0.2 foot strip of land directly adjacent to the Lot 2 residence is within Lot 2's boundaries, the evidence is legally insufficient to support the "take nothing" judgment entered against the Trust. *See City of Keller*, 168 S.W.3d at 810.

We sustain the Trust's first issue and we reverse and render judgment in the Trust's favor with respect to the 0.2 foot-wide strip of land adjacent to the southwestern wall of the Lot 2 residence.

## IV. Adverse Possession to, or Prescriptive Easement for, Eaves and Sewer Line

The Trust claimed title to the portion of the eaves on Cooke's roof overhanging Lot 1 and the sewer line servicing his residence that was located on Lot 1 under the theory of adverse possession. Alternatively, the Trust claimed a prescriptive easement with respect to the eaves and sewer line.

### a. Adverse Possession

Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" throughout the statutorily required period. TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (West 2002); *Masonic Bldg.*

15

*Ass'n v. McWhorter*, 177 S.W.3d 465, 472 (Tex. App.—Houston [1st Dist.] 2005, no pet.). During trial, Cooke was asked to clarify whether he was claiming title to "the dirt beneath the overhang that's on Mr. Morrison's Lot 1 property." Cooke stated that aside from the 0.2 foot strip of land immediately next to the exterior wall of his residence, he was not claiming "the rest of the dirt."

> Counsel: Okay. You're only seeking the roof and easement for the roof overhang to the extent that overhang is over the Morrison property, is that correct?
>
> Cooke: Either title or an easement.
>
> Counsel: And the sewer?
>
> Cooke: And the sewer line.

As such, Cooke was not claiming ownership to any real property associated with either the sewer line or the eaves. His claim of ownership is better understood to be one for a prescriptive easement.

### b. Prescriptive Easement

A prescriptive easement may arise from a property owner's knowing acquiescence (whether actual or constructive) in a claimant's adverse use of the property under a claim of right continuously for ten years or more. *See Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App.—Austin 1998, pet. denied); *Wiegand v. Riojas*, 547 S.W.2d 287, 290 (Tex. Civ. App.—Austin 1977, no writ). In order to have established an easement by prescription, Cooke must have shown that his use

16

of the Morrisons' property was (1) open and notorious, (2) adverse to Morrisons' claim of right, (3) exclusive, (4) uninterrupted, and (5) continuous for a period of ten years. *See Toal v. Smith*, 54 S.W.3d 431, 435 (Tex. App.—Waco 2001, pet. denied). If there is a failure to establish any of these essential elements by a preponderance of the evidence, the claim of easement cannot be maintained. *Brooks v. Jones*, 578 S.W.2d 669, 674 (Tex. 1979).

The ten-year requirement may be established by tacking successive interests if there is "'privity of estate between each holder and his successor.'" *Boerschig v. Southwestern Holdings, Inc.*, 322 S.W.3d 752, 756 (Tex. App.—El Paso 2010, no pet.) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 16.023 (West 2002) for proposition that tacking allowed for establishing prescriptive easement); *Kleckner v. McClure*, 524 S.W.2d 608, 611 (Tex. Civ. App.—Fort Worth 1975, no writ) (noting that successive periods of adverse possession by those in privity can be tacked or added together to satisfy ten-year limitations period). The prescriptive period for an easement by prescription does not begin to run until the servient estate owner can be charged with actual or constructive notice of the claimant's use. *Wiegand*, 547 S.W.2d at 290. Once a prescriptive easement is established, it can be passed on to successors. *See First Nat'l Bank v. Beavers*, 602 S.W.2d 327, 329 (Tex. Civ. App.—Texarkana 1980, no writ) (citing *Martin v. Burr*, 228 S.W. 543 (Tex. 1921)).

Here, the Trust argues that the trial court erred in concluding that it did not acquire the prescriptive easement for the eaves and sewer line that vested during Cooke's grandparents' possession of Lot 2. The trial court expressly found that both the eaves and the sewer line had been in place since 1981. The trial court also found that the prescriptive period for the eaves and sewer line matured during Cooke's grandparents' possession, and therefore, Cooke's grandparents could have asserted a prescriptive easement by tacking their ownership to their predecessor's ownership.[5]

Nevertheless, the trial court concluded that the deed from Cooke's grandparents conveying Lot 2 to the Cooke Family Living Trust did not convey any such easement. The trial court's conclusion is based upon the following language in the April 1995 deed to the Cooke Family Living Trust: "Reservation from and Exception to Conveyance and Warranty: This deed is subject to all easements, restrictions, conditions, covenants, reservations, and other instruments of record." According to the trial court, the language, "other instruments of record," is limiting language intended to preclude conveyance of other unrecorded rights—like the unrecorded prescriptive easement.

---

[5] Although this finding appears among the conclusions of law, the designation is not controlling and we may treat it as a finding of fact. *Ray v. Farmers' State Bank,* 576 S.W.2d 607, 608 n.1 (Tex. 1979) (citing *McAshan v. Cavitt,* 149 Tex. 147, 229 S.W.2d 1016 (1950)).

A deed is subject to the same rules of interpretation and construction as a contract. *See Luckel v. White*, 819 S.W.2d 459, 461–62 (Tex. 1991); *CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The construction of an unambiguous deed is a question of law, which we review de novo. *Luckel*, 819 S.W.2d at 461; *CenterPoint Energy*, 177 S.W.3d at 430. In conducting a de novo review, we exercise our own judgment and give no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1999). The primary duty of a court when construing an unambiguous deed is to ascertain the parties' intent as expressed in the deed's four corners. *Luckel*, 819 S.W.2d at 461; *CenterPoint Energy*, 177 S.W.3d at 430. In applying the "four corners" rule, we must not look at isolated terms but are to consider the instrument as a whole and attempt to harmonize and give effect to all provisions. *Luckel*, 819 S.W.2d at 461; *CenterPoint Energy*, 177 S.W.3d at 430. If the deed is worded in such a way that it can be given a definite or certain legal meaning, then it is not ambiguous and the court will be confined to the writing. *See CenterPoint Energy*, 177 S.W.3d at 431.

As the trial court correctly points out, the deed from the Cookes to the Cooke Family Living Trust states that the "deed is subject to all easements, restrictions, conditions, covenants, reservations, and other instruments of record." The deed, however, also includes the standard habendum clause conveying Lot 2

19

"together with all and singular the rights and appurtenances thereto in anywise belonging" which conveys any easement appurtenant. *See Walchshauser v. Hyde*, 890 S.W.2d 171, 174 (Tex. App.—Fort Worth 1994, writ denied); *McDaniel v. Calvert*, 875 S.W.2d 482, 484 (Tex. App.—Fort Worth 1994, no writ) (transfer of dominant estate "automatically includes the [appurtenant] easement across the servient tenement's land" regardless of whether easements are referenced in deed or not). Looking at the four corners of the deed, it is apparent that the grantor, the Cookes, intended to convey any easements appurtenant, whether they were recorded or not, when they conveyed Lot 2 to their family trust. The deed from the Cooke Family Living Trust to the Trust also contains a habendum clause conveying Lot 2 "together with all and singular the rights and appurtenances thereto in anywise belonging."

We hold that the April 1995 deed, which is not ambiguous, conveyed all of the Cookes' interest in Lot 2, "together with all and singular the rights and appurtenances thereto in anywise belonging" (i.e., any prescriptive easements), and that the 1997 deed from the Cooke Family Living Trust to the Trust conveyed that prescriptive easement to the Trust.[6]

---

[6]    The trial court concluded that article II, section 3 of the Supplemental Declaration of Covenants and Restrictions recorded by the subdivision's developer, ELRO-Atascocita, Inc., who is predecessor-in-interest with respect to both the Trust and the Morrisons, precludes conveyances of any easement appurtenant. Section 3 states that "[t]itle to any Lot conveyed by contract, deed or other conveyance shall

20

Accordingly, we sustain the Trust's issue and reverse and render judgment in the Trust's favor with respect to its prescriptive easement claim.

## V. Easement by Necessity

The elements needed to establish an implied easement by necessity are as follows: (1) unity of ownership prior to separation; (2) access that is a necessity and not a mere convenience; and (3) necessity that exists at the time of the severance of the two estates. *Koone v. Brite Estate*, 663 S.W.3d 451, 452 (Tex. 1984).

Here, the Trust demonstrated that both Lots 1 and 2 were previously owned by Stiles, Inc. and built the homes on thereon—both of which were substantially complete by November, 1981. When Stiles, Inc. conveyed Lot 1 to the Morrisons on December 30, 1981, the eaves and sewer line of the home on Lot 2 were already in place, the need to access Lot 1 in order to maintain the exterior of the home on Lot 2 and the sewer line serving Lot 2 was evident, given the home's close proximity to the property line. Cooke testified that he had no other way of accessing the side of the home, or his sewer line, except through the Morrisons'

not be held or construed in any event to include title to any . . . appurtenances therefore, constructed by or under Declarant or its agents . . . ." The "declarant" is ELRO-Atascocita. The home on Lot 2, including its eaves and sewer line, were constructed by Stiles, Inc. Although it is a successor-in-interest, there is no evidence that Stiles, Inc. is an "agent" of ELRO-Atascocita.

21

backyard. In light of this uncontradicted testimony, we conclude that the Trust established all of the elements of an easement by necessity as a matter of law.

We sustain the Trust's issue and reverse and render judgment in favor of the Trust with respect to its claim for an easement by necessity.

## VI. Restrictive Covenants

The Trust further argues that the trial court erred in finding that the eaves and sewer line to be encroachments prohibited by the applicable restrictive covenants. The Trust further contends that the Morrisons' cause of action for enforcement of the restrictive covenants is barred by the statute of limitations, and therefore, the trial court erred in finding that the eaves and sewer line violated the restrictive covenants.

Both Lots 1 and 2 are subject to restrictive covenants originally recorded by the subdivision's developer, ELRO-Atascocita, Inc., which was supplemented in 1979 and later amended by ELRO-Atascocita's successor-in-interest, Gibraltar, on January 16, 1981.

### a. Statute of Limitations

The Trust contends that the Morrisons' cause of action for enforcement of the restrictive covenants is barred by the statute of limitations, and therefore, the trial court erred in finding that the overhanging eaves and sewer line buried beneath the neighbors' backyard violated the restrictive covenants. The Morrisons

22

respond that Cooke waived this argument by failing to affirmatively plead it below or raise it at trial. Cooke maintains that this affirmative defense was raised during trial, and points to his discussion of the issue in his response to the Morrisons' brief on attorney's fees and his request to the trial court to take judicial notice of his response. Although Cooke testified that the Morrisons should be estopped from complaining about the eaves and sewer line because they knew about them for twenty-five years—and the applicable statute of limitations was four years— this is the only specific discussion of Cooke's statute of limitations defense in the reporter's record. Notably, the trial court did not make any direct findings or conclusions of law with respect to this affirmative defense.

Limitations is an affirmative defense that is subject to being waived if it is not affirmatively pleaded. *See* TEX. R. CIV. P. 94 (listing statute of limitations as affirmative defense that shall be set forth in pleading to preceding pleading); *Massey v. Columbus State Bank*, 35 S.W.3d 697, 700 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). A defendant bears the burden to plead, prove, and secure findings to support its affirmative defense of limitations. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988) (affirmative defense of limitations must be proven by asserting party). This burden includes establishing when the plaintiff's cause of action accrued in order to demonstrate the bar of limitations. *See Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st

23

Dist.] 1984, writ ref'd n.r.e.). A motion or brief filed with the trial court is not a pleading. *See* TEX. R. CIV. P. 83 (defining defendant's pleadings as original answer and such supplemental answers as may be necessary).

We hold that Cooke failed to affirmatively plead the defense of statute of limitations below and has not preserved this issue for our review.

### b. Language of Restrictive Covenant

The trial court concluded that the eaves and sewer line violated section 9 of the applicable deed restrictions. The specific provision of the deed restrictions at issue reads in pertinent part:

> Section 9. Building Location. . . . Residential buildings may be constructed beginning on one zero side interior line and continuing to within ten (10) feet of the opposite side interior lot line so that the distance ten (10) feet is maintained as a minimum distance between the side of each building on adjoining lots. . . . For the purposes of this Section, eaves, steps and open porches shall not be considered as part of the building; provided, however, that the foregoing shall not be construed to permit any portion of the building on any Lot to encroach upon another Lot.

We review a trial court's interpretation of a restrictive covenant de novo. *Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied); *see also Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Whether restrictive covenants are ambiguous is a matter of law for the court to decide. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478

24

(Tex. 1998). A covenant is unambiguous if, after appropriate rules of construction have been applied, the covenant can be given a definite or certain legal meaning. *Uptegraph*, 312 S.W.3d at 925. In contrast, if, after applying appropriate rules of construction, a covenant is susceptible of more than one reasonable interpretation, the covenant is ambiguous. *Id.* Our primary duty in construing a restrictive covenant is to ascertain the parties' intent from the language used in the instrument. *Owens*, 241 S.W.3d at 129.

Section 9, which governs the location of residential buildings, states that "eaves, steps and open porches shall not be considered as part of the building" for the purpose of establishing a building's distance from another building on an adjacent lot. This means that although a building may not be located within ten feet of a building on an adjoining lot, its eaves, steps and open porches may. Section 9 further recites that although a building's eaves, steps and open porches may be built within ten feet of a building on an adjoining lot, this provision cannot be construed to "permit any portion of the building on any Lot to *encroach* upon another Lot." (emphasis added).

The plain language of this provision addressing building location neither expressly nor implicitly prohibits roof eaves from being physically located so as to overhang across a boundary line. Second, the plain language of this section is completely silent as to the placement of utilities serving residential buildings.

25

Third, the restrictive covenant prohibits "encroachments." The term "encroach" refers to an unlawful trespass or intrusion on another's property rights. Because the Trust acquired a prescriptive easement with respect to both the eaves and the sewer line, its use of the Morrisons' property was not unlawful.[7]

We hold that section 9 of the restrictive covenants, which is not ambiguous, does not prohibit a sewer line serving a house on one lot from being routed through an adjoining lot. We further hold that because the Trust acquired a prescriptive easement with respect to both the eaves and the sewer line, neither of these things can be considered "encroachments" upon the Morrisons' property.

We sustain the Trust's issue and reverse and render judgment in favor of the Trust with respect to the Morrisons' claim for enforcement of the restrictive covenants.

## VII. Injunction, Declaratory Judgment, and Attorney's Fees

Having reversed and rendered judgment in favor of the Trust with respect to its claims for trespass to try title, a prescriptive easement, and an easement by necessity, and with respect to the Morrisons' claim for enforcement of the restrictive covenants, we hold that the trial court erred when it granted the Morrisons' request for an injunction and declaratory judgment. Because the

---

[7]     We further note that the construction blueprints for the Lot 2 house were subject to review by the subdivision architectural control committee before the house was constructed. The architectural control committee presumably found that the Lot 2 house would not violate the deed restrictions and approved its construction.

26

Morrisons did not prevail on their declaratory judgment action, the trial court erred when it awarded the Morrisons attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008) (stating trial court may award reasonable and necessary attorney's fees to prevailing party in declaratory judgment action); TEX. PROP. CODE § 5.006(a) (West 2004) (stating prevailing party in actions for breach of restrictive covenant pertaining to real property entitled to award of reasonable attorney's fees); TEX. CIV. PRAC. & REM. CODE ANN. § 16.034(a) (West Supp. 2012) (stating trial court may award costs and attorney's fees to prevailing party "[i]n a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the prevailing party recovers possession of the property from a person unlawfully in actual possession").

## Conclusion

Having held for the Trust with respect to its trespass to try title, prescriptive easement, and easement by necessity claims, we reverse the portions of the trial court's judgment that (1) order that the Trust "take nothing" on its claims, (2) declare that the roof eaves and sewer line of the house on the Trust's property encroach upon the Morrisons' property in violation of the applicable restrictive covenants, (3) require the Trust to remove the portions of the eaves and sewer line

27

crossing the Morrisons' property, and (4) award attorney's fees and costs to the Morrisons.

We render judgment that (1) the Trust holds title to the .2 foot strip of land immediately to the west of the southwestern wall of the Cooke/Trust house on Lot 2, as depicted on the Weisser Survey, (2) the Trust has a prescriptive easement both for the sewer line that services the Cooke/Trust house on Lot 2 and runs buried beneath the Morrisons' property, and for those portions of roof eaves that overhang the Morrisons' property and (3) the Trust has an easement by necessity upon the Morrisons' property for the repair and maintenance of the exterior of the home on the Trust's property (including the roof and eaves) and the sewer line serving the Trust's property, and (4) the Morrisons take nothing on their claims.

We also remand to the trial court for the limited purpose of (1) determining the scope and specific location of the Trust's prescriptive easement and easement by necessity across the Morrisons' property, and (2) entering a valid judgment conveying said easements to the Trust in accordance with this May 7, 2013 memorandum opinion. *See AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008) ("To be valid, a conveyance of real property must contain a sufficient description of the property to be conveyed. A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or

28

data by which the particular land to be conveyed may be identified with reasonable certainty.")

Jim Sharp
Justice

Panel consists of Justices Jennings, Higley, and Sharp.