Opinion issued June 19, 2025



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00628-CV

_____

## CARL RAY MARBURGER, Appellant

## V.

## LESLIE RENE GUEST A/K/A LESLIE RENEE GUEST AND WALTER J. PARKER, Appellees

On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2016-49657

## MEMORANDUM OPINION

In this partition suit involving the interests of various family members and two non-family members in a single-family residential home, the trial court issued a final judgment declaring the parties' ownership interests and ordering a sale of the home. The judgment declared that appellant Carl Ray Marburger owned an

undivided 1/2 interest in the home and that appellee Leslie Rene Guest a/k/a Leslie Renee Guest, appellee Walter J. Parker, and Mary Frances Marburger Gannon each owned an undivided 1/6 interest in the home. In his sole issue on appeal, Marburger argues that the trial court erred by declaring that Guest and Parker each owned an undivided 1/6 interest in the home. We affirm.

## Background

Nancy Marburger was the sole owner of a single-family home in Humble (the home or the subject property) when she died in 2005.[1] In June 2005, the executor of Nancy's will conveyed the home by special warranty deed in four equal shares to Nancy's four children: Marburger, Vick John Marburger, Glen Greg Marburger, and Mary Frances Marburger Gannon. About two weeks later, Mary disavowed her interest in the home and conveyed her 1/4 share to each of her siblings in equal shares. After this conveyance, Marburger, Vick, and Glen each owned an undivided 1/3 interest in the home.[2]

Vick died in 2008. He apparently died intestate, and his siblings were his heirs. Vick's 1/3 interest in the home was thus distributed in equal shares to his siblings.

---

[1]  Except for appellant Carl Marburger, we adopt the parties' practice of referring to members of the Marburger family by their first names for ease of reading because they share the same last name.

[2]  The executor of Nancy's will and Mary both conveyed Marburger's share to a trust for Marburger. The trust was dissolved in 2012, and the interest was then distributed to Marburger.

2

After Vick's death, Marburger and Glen each owned an undivided 4/9 interest, and Mary owned the remaining undivided 1/9 interest in the home. Mary did not convey this interest.

In February 2011, Guest and Parker moved into the home. In 2012, Glen conveyed an undivided 1/3 interest to Guest by warranty deed. This conveyance is the primary dispute in this proceeding. Marburger claims that he bought Glen's entire interest in the home in 2008 prior to the conveyance to Guest. In 2016, Marburger filed a forcible detainer action against Guest, obtained a writ of possession, and obtained possession of the home.

Guest and Parker filed the underlying lawsuit in 2016 against Marburger, Glen, and Mary.[3] In their live petition, they sought a declaratory judgment that they owned an undivided 1/3 interest in the home. *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a). They asserted claims for quiet title, partition, and contribution from the co-owners for maintenance and repairs to the property. They also asserted claims for conversion of their personal property, liability under the Texas Theft Liability Act, unjust enrichment, and attorney's fees under the Uniform Declaratory Judgments Act. *See id.* §§ 37.009 (UDJA attorney's fees), 134.001–.005 (Theft Liability Act).

---

[3]     Guest and Parker were unable to find Mary to serve her with citation, so she was served by publication. *See* TEX. R. CIV. P. 758. The trial court appointed an attorney ad litem to defend Mary's interests in the lawsuit. *See* TEX. R. CIV. P. 759. Guest and Parker originally named Vick as a defendant, but they nonsuited their claims against him in the second amended petition.

After the underlying trial proceedings were initiated, Glen died. Like Vick, Glen apparently died intestate, and his siblings were his heirs. To the extent that Glen retained a 1/9 interest in the home—which Marburger disputes—this interest was distributed in equal shares to his living siblings. Assuming that Glen had retained a 1/9 interest, after his death, Marburger owned an undivided 1/2 interest, Mary owned an undivided 1/6 interest, and Guest owned the remaining undivided 1/3 interest.

The case was called for trial in February 2023. Prior to trial, Guest, Parker, and Glen died. The attorney for Guest and Parker represented that they were married, Guest's 1/3 interest in the home was community property, and Guest and Parker therefore each owned half of the 1/3 interest—or 1/6 undivided interest—in the home.

At a pretrial hearing, Guest and Parker requested that the trial court rule as a matter of law on the parties' ownership interests in the home for purposes of partition. To support Guest's and Parker's argument concerning their ownership interest in the home, the trial court admitted into evidence the 2005 deed conveying the home from Nancy to her four children, including Glen; the 2005 deed conveying Mary's 1/4 interest to her three siblings, including Glen; the 2012 deed conveying Glen's undivided 1/3 interest to Guest; and a demonstrative exhibit showing the

4

various conveyances, distributions, and ownership interests in the home since Nancy died in 2005.

Marburger appeared pro se at the hearing. He argued that he bought Glen's entire interest in the home in 2008 by oral contract, and therefore Glen had no interest to convey to Guest in 2012. The record indicates that Marburger introduced into evidence an affidavit from a witness to the oral contract. The trial court did not admit the affidavit, but the court allowed it to be entered into the record for purposes of appeal. Marburger also argued that the 2012 warranty deed to Guest was invalid because any sale "was supposed to go through the executor of the estate," but the deed indicated that Glen acted individually in the sale. Marburger did not present any evidence supporting this argument. Marburger also argued that the deed did not use Glen's legal name.

During the hearing, the trial court ruled as a matter of law that Marburger owned an undivided 1/2 interest in the home, and Guest, Parker, and Mary each owned an undivided 1/6 interest. At the end of the hearing, the parties stated that they had entered into a settlement agreement, and they withdrew their exhibits. The affidavit of the witness to the alleged oral contract between Marburger and Glen therefore does not appear in the appellate record.

The parties ultimately did not settle. Guest and Parker tried their claims for conversion, liability under the Theft Liability Act, unjust enrichment, and attorney's fees under the UDJA to a jury, but the jury found against them on all their claims.

The trial court subsequently entered a final judgment in accordance with its prior rulings and the jury's verdict. Concerning the various ownership interests in the home that the court had previously decided as a matter of law, the judgment stated that:

2.	Plaintiff, the Estate of Leslie Rene Guest, owns an undivided one-sixth (1/6) interest in the fee simple title to the Subject Property;

3.	Plaintiff, the Estate of Walter Parker, owns an undivided one-sixth (1/6) interest in the fee simple title to the Subject Property;

4.	Defendant, Carl Marburger, owns an undivided one-half (1/2) interest in the fee simple title to the Subject Property; [and]

5.	Defendant, Mary Marburger Gannon, owns an undivided one-sixth (1/6) interest in the fee simple title to the Subject Property[.]

The judgment further ordered that the home be sold and that the proceeds from the sale be distributed to the co-owners according to their proportional interests.[4] This appeal followed.

---

[4] The judgment also awarded attorney's fees to the attorney ad litem and ordered that Guest, Parker, and the attorney ad litem shall have all writs of execution and other processes necessary to enforce the judgment.

**Partition of Jointly Owned Real Property**

In his sole issue on appeal, Marburger challenges the trial court's finding as a matter of law that Guest and Parker each owned an undivided 1/6 interest in the subject property.[5]

**A.      Standard of Review and Governing Law**

"A joint owner or claimant of real property or an interest in real property . . . may compel a partition of the interest or the property among the joint owners or claimants under [Property Code Chapter 23] and the Texas Rules of Civil Procedure." TEX. PROP. CODE § 23.001; *see Wood v. Wiggins*, 650 S.W.3d 533, 548 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) ("Texas law will not force a reluctant joint owner of real property to maintain joint ownership. . . . This right to partition is considered absolute."). When a party seeks partition, the trial court "shall determine the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law or equity affecting the title to such land which may arise." TEX. R. CIV. P. 760.

The trial court must order a partition if it determines that all or part of the property is susceptible of partition. TEX. R. CIV. P. 761. If the court finds that "a fair and equitable division" of the property cannot be made, it must "order a sale of so much as is incapable of partition." TEX. R. CIV. P. 770; *see also Dejean v. Spates*,

---

[5]      Guest and Parker did not file an appellate brief.

7

No. 14-22-00908-CV, 2024 WL 1668018, at *2 (Tex. App.—Houston [14th Dist.] Apr. 18, 2024, no pet.) (mem. op.) ("Texas courts have found that single-family homes . . . are not susceptible to partition in kind.").

The rules of equity govern the partition of property. *Wood*, 650 S.W.3d at 547; *Williams v. Mai*, No. 01-11-00611-CV, 2012 WL 6644704, at *4 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, no pet.) (mem. op.). "A trial court exercises broad discretion in balancing the equities involved in a case seeking equitable relief." *Wood*, 650 S.W.3d at 547 (quoting *Bowman v. Stephens*, 569 S.W.3d 210, 223 (Tex. App.—Houston [1st Dist.] 2018, no pet.)). An appellate court will not overturn a trial court's ruling on an equitable claim unless it is arbitrary, unreasonable, or without regard to guiding legal principles. *Id.*; *Bowman*, 569 S.W.3d at 223. When parties dispute the facts, a trial court does not abuse its discretion if some conflicting evidence supports its decision. *Wood*, 650 S.W.3d at 547 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005)); *Williams*, 2012 WL 6644704, at *4 (quoting *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009)).

A trial court's factual findings, both express and implied, are not conclusive and may be challenged for legal and factual sufficiency of the evidence. *Bowman*, 569 S.W.3d at 223. The test for legal sufficiency considers "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* (quoting *City of Keller*, 168 S.W.3d at 827). In determining whether

legally sufficient evidence supports a finding, we credit favorable evidence if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* If the evidence falls within the zone of reasonable disagreement, then the reviewing court may not substitute its judgment for that of the factfinder. *Id.* at 223–24. In a factual sufficiency review, the court considers and weighs all the evidence supporting and contradicting the challenged finding and sets aside the finding only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Id.* at 224; *accord Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016).

In a bench trial, the trial court determines the credibility of the witnesses and the weight to be given their testimony. *Bowman*, 569 S.W.3d at 223. The trial court may believe one witness and disbelieve others, and it may resolve inconsistencies in any witness's testimony. *Id.*

We review declaratory judgments under the same standards as other judgments and decrees. *Unocal Pipeline Co. v. BP Pipelines (Alaska) Inc.*, 512 S.W.3d 492, 499–500 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE § 37.010 ("All orders, judgments, and decrees under this chapter may be reviewed as other orders, judgments, and decrees."). We look to the procedure used to resolve the issue at trial to determine the appropriate appellate standard of review. *Unocal Pipeline*, 512 S.W.3d at 499–500.

9

The construction of an unambiguous deed presents a question of law that we review de novo. *Jordan v. Parker*, 659 S.W.3d 680, 684 (Tex. 2022); *Cooke v. Morrison*, 404 S.W.3d 100, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). We construe a deed's language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise. *Jordan*, 659 S.W.3d at 684 (quotations omitted). When construing an unambiguous deed, our primary duty is to ascertain the parties' intent as expressed in the four corners of the deed. *Id.*; *Cooke*, 404 S.W.3d at 111.

## B.    Analysis

The final judgment declared that Guest and Parker each owned an undivided 1/6 interest in the subject property. *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a) (authorizing person interested under deed to have court determine any question of construction or validity of deed and obtain declaration of rights, status, or other legal relations under deed). Marburger challenges this finding, arguing that Guest and Parker had no ownership interest in the subject property for two reasons.[6] First, he argues that he bought Glen's entire interest in the property in September 2008, and therefore Glen had no interest to convey to Guest in 2012. Second, he argues that

---

[6] On appeal, Marburger does not challenge the trial court's finding that Mary owned an undivided 1/6 interest in the subject property. Nor does Marburger challenge the trial court's implicit findings that Guest and Parker were married, Guest's 1/3 interest—if she owned an interest—was community property, and Guest and Parker were therefore each entitled to half of the 1/3 interest, or 1/6 interest each.

10

the 2012 deed conveying Glen's interest to Guest contains "notarial errors" rendering it invalid. We construe Marburger's issue as a challenge to the sufficiency of the evidence supporting the trial court's findings concerning Guest's and Parker's ownership interests.

As the parties seeking partition, Guest and Parker had the burden to prove that they owned an interest in and had a right to possession of the subject property. *See* TEX. PROP. CODE § 23.001; *Trevino v. Trevino*, 64 S.W.3d 166, 171 (Tex. App.— San Antonio 2001, no pet.) (stating that to compel partition, "a plaintiff need only establish that he owns an interest in the property and has a right to possession of a portion thereof"); *accord Manchaca v. Martinez*, 148 S.W.2d 391, 391 (Tex. 1941). To establish their ownership interest in the home, Guest and Parker introduced into evidence the 2005 deed conveying the home from Nancy to the four Marburger siblings, including Glen; the 2005 deed conveying Mary's share to her three siblings, including Glen; the 2012 deed conveying a 1/3 interest in the home from Glen to Guest; and a demonstrative exhibit. On appeal, Marburger only challenges the 2012 deed from Glen to Guest.

Marburger argues that the 2012 deed is "invalid due to notarial errors." According to Marburger, the deed does not list Glen's legal name, and it is "not filled out completely[.]"[7] We disagree with Marburger that the 2012 deed is invalid.

"A valid conveyance of an interest in land 'must satisfy the requirements of both the statute of conveyances, Property Code section 5.021, and the statute of frauds,'" Business and Commerce Code section 26.01. *ConocoPhillips Co. v. Hahn*, 704 S.W.3d 515, 530 (Tex. 2024) (quoting *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 43 (Tex. App.—Houston [1st Dist.] 2011, no pet.)). To convey an interest in land under the statute of conveyances, the instrument of conveyance must be in writing, must be signed, and must be delivered by the party disposing of his interest. TEX. PROP. CODE § 5.021; *see Gordon*, 352 S.W.3d at 43. The statute of frauds provides that a promise or agreement for the sale of real property is not

---

[7] Marburger characterizes the 2012 deed as a quitclaim warranty deed, but we disagree that it is a quitclaim deed. A warranty deed to land conveys property, while "a quitclaim deed conveys the grantor's rights in that property, if any." *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 486 (Tex. 2005). Quitclaim deeds are valid even if it is later determined that they conveyed nothing, and courts look to the language of the deed as a whole to determine whether the instrument conveyed property itself or merely the grantor's rights. *Id.* Where, for example, a deed states that it conveys all the grantor's right, title, and interest without warranty of merchantability or warranty of title, the deed is a quitclaim deed as a matter of law. *Id.* at 486–87. The 2012 deed, by contrast, is entitled "Warranty Deed" and states that "[t]he Grantor warrants that it is [the] lawful owner and has full right to convey the property, and that the property is free from all claims, liabilities, or indebtedness, and that the Grantor and its successors will warrant and defend title to the Grantee against the lawful claims of all persons." This language therefore indicates that the 2012 deed is a warranty deed, not a quitclaim deed.

12

enforceable unless the promise or agreement is "in writing" and "signed by the person to be charged with the promise or agreement[.]" TEX. BUS. & COM. CODE § 26.01(a), (b)(4); *see Wood*, 650 S.W.3d at 550 ("The statute of frauds concerns problems of proof and exists to prevent fraud and perjury in certain types of transactions by requiring agreements to be in writing and signed by the party to be charged."). Otherwise, "it is not necessary to have all the formal parts of a deed formerly recognized at common law or to [include] technical words." *Hahn*, 704 S.W.3d at 530–31 (quotation omitted).

The Texas Supreme Court has stated that to be legally effective, a deed generally must contain the following elements: (1) the instrument of conveyance is in writing; (2) the instrument sufficiently describes the interest to be conveyed; (3) the grantor and grantee can be ascertained from the instrument as a whole; (4) the instrument contains operative words or words of grant showing the grantor's intention to convey title to an interest in real property to the grantee; (5) the instrument is properly signed and acknowledged by the grantor; and (6) the instrument is delivered to and, if necessary, accepted by the grantee. *Id.* at 531–32; *see Gordon*, 352 S.W.3d at 43.

Marburger argues that Glen's legal name was "Glen Gregory Marburger." The 2012 deed reversed the first and middle name, identifying the grantor as "Gregory Glen Marburger." However, the grantor signed as "Glen Greg Marburger," and the

13

notary's acknowledgment identifies the grantor as "Glen Greg Marburger." Marburger provides no legal authority on appeal establishing that a deed is ineffective if the grantor's first and middle names are reversed or if the grantor's middle name is shortened.

Our sister courts of appeals have stated that a "slight misnomer" in the grantor's name—such as listing the grantor's first name as "Jame" instead of "James"—generally does not affect a deed's validity. *Yarbrough v. Brooks*, No. 14-19-00748-CV, 2021 WL 3922934, at \*6 (Tex. App.—Houston [14th Dist.] Sept. 2, 2021, no pet.) (mem. op.); *see also Sides v. Saliga*, No. 03-17-00732-CV, 2019 WL 2529551, at \*8 (Tex. App.—Austin June 20, 2019, pet. denied) (mem. op.) ("[C]ourts presented with similar misnomer issues have considered the evidence presented in the record to determine whether the error was sufficiently minor or the names sufficiently similar to have at least placed the buyer on notice that she should investigate whether there will be a competing claim against her title."). In *Yarbrough*, the court concluded that a summary judgment movant did not conclusively prove that a deed was void for misnaming the grantor as "Jame" instead of "James" based in part on the notary's acknowledgement correctly identifying the grantor. 2021 WL 3922934, at \*6; *see also Hahn*, 704 S.W.3d at 531–32 (stating that for deed to be valid, court must be able to ascertain grantor from instrument as whole).

The appellate record contains conflicting evidence of Glen's legal name. Although Glen was a party, he died during the trial proceedings below. Before he died, he filed a pro se answer. The answer states his name as "Gregory Glen Marburger," although his handwritten signature states "Glen Gregory Marburger." Guest's and Parker's pleadings identify Glen as both "Gregory Glen Marburger" and "Glen Greg Marburger"—which perhaps explains why he identified himself this way in the answer. Both 2005 deeds—the deed from Nancy to her four children and the deed from Mary to her three siblings—identify Glen as "Glen Greg Marburger." The final judgment identifies Glen in the case style as "Gregory Glen Marburger." Marburger did not present any evidence concerning Glen's true legal name. The record before us therefore does not resolve Glen's legal name.

In any event, we conclude that the misnomer between "Glen Gregory Marburger" and "Gregory Glen Marburger" is sufficiently minor and the names sufficiently similar that the discrepancy did not affect the validity of the 2012 deed. *See Yarbrough*, 2021 WL 3922934, at \*6; *Sides*, 2019 WL 2529551, at \*8. Both Glen's signature and the notary acknowledgement identified Glen as "Glen Gregory Marburger," which Marburger contends on appeal is Glen's legal name. *See Yarbrough*, 2021 WL 3922934, at \*6. Thus, we can ascertain the grantor from the instrument as a whole. *See Hahn*, 704 S.W.3d at 531–32.

15

Marburger also argues that the 2012 deed is invalid because it was "not filled out completely[.]" Marburger does not identify which specific parts of the deed were incomplete or how any missing information invalidates the deed. Our review of the deed indicates that only two parts were left blank: (1) a section identifying the person who prepared the document, and (2) the name and signature of a second witness in the notary acknowledgement. This information, however, does not constitute any of the required elements of a valid deed. *See id.*

To the contrary, the completed portions of the instrument contain all the necessary elements of a valid deed, and Marburger does not contend otherwise. *See id.*; *Gordon*, 352 S.W.3d at 43. Therefore, Marburger has not established that the 2012 deed is invalid. Because reasonable and fair-minded people could determine that the deed conveyed an undivided 1/3 interest in the subject property to Guest, the deed was legally sufficient evidence to support the trial court's finding that Guest and Parker each owned an undivided 1/6 interest in the subject property. *See Bowman*, 569 S.W.3d at 223; *see also In re Marriage of Murray*, 15 S.W.3d 202, 205 (Tex. App.—Texarkana 2000, no pet.) ("Under general property law principles, a deed is prima facie evidence of the grantee's ownership.").

Next, Marburger argues that he bought Glen's entire interest in the subject property in 2008, and therefore Glen had no interest to convey to Guest in 2012. The appellate record does not contain any evidence supporting this argument.

16

During the hearing, Marburger argued that he had an affidavit from a witness who was present when Glen agreed to sell his interest in the home to Marburger. The trial court ruled that the affidavit was inadmissible, but the court permitted it to be included in the record for purposes of appeal. At the end of the hearing, however, both parties withdrew all their exhibits after representing that they had entered into a settlement agreement. The parties ultimately did not settle, and Marburger did not introduce the affidavit into evidence again or request its inclusion in the record on appeal. Thus, the affidavit does not appear in the appellate record.

Marburger did attach a copy of a handwritten affidavit to his appellate brief, which presumably is the same affidavit he introduced into evidence and later withdrew at the hearing. However, appellate courts are confined to matters appearing in the appellate record. *Democratic Schs. Rsch., Inc. v. Rock*, 608 S.W.3d 290, 305 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Dauz v. Valdez*, 571 S.W.3d 795, 811 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Appellate courts cannot consider documents attached as exhibits or appendices to appellate briefs if those documents are not formally included in the record on appeal. *Rock*, 608 S.W.3d at 305; *Dauz*, 571 S.W.3d at 811. Because the affidavit attached to Marburger's appellate brief is not included in the record on appeal, it is not properly before this Court, and we may not consider it.

But even if the affidavit were properly before this Court, it does not meet any of the elements for a valid conveyance. *See Hahn*, 704 S.W.3d at 531–32; *Gordon*, 352 S.W.3d at 43. As stated above, the statute of conveyances requires that a valid conveyance of real property be in writing, signed, and delivered by the conveyor. TEX. PROP. CODE § 5.021; *see Gordon*, 352 S.W.3d at 43. The statute of frauds provides that a promise or agreement to sell real property is not enforceable unless it is in writing and signed by the person to be charged with the promise or agreement. TEX. BUS. & COM. CODE § 26.01(a), (b)(4). Although the affiant states that he "personally witnessed Glen sell his portion of [the subject property] to [Marburger] with the agreement of cash given to Glen" and other promises exchanged, there is no evidence in the appellate record (or attached to Marburger's brief) showing a written conveyance of Glen's interest in the property to Marburger or a signed, written agreement to sell the property. Therefore, the affidavit is no evidence that Glen conveyed or promised to convey any interest in the home to Marburger.

Similarly, to the extent Marburger argued at the hearing that he and Glen entered into an oral contract for the sale of Glen's interest in the subject property, an oral contract was ineffective to convey any interest. *See* TEX. PROP. CODE § 5.021; TEX. BUS. & COM. CODE § 26.01(a), (b)(4); *Hahn*, 704 S.W.3d at 531; *Gordon*, 352 S.W.3d at 43. To the extent Marburger argued that a written deed or contract for the sale of Glen's interest to him existed, he did not produce one. As the factfinder, the

18

trial court determined Marburger's credibility, and it reasonably could have chosen not to believe him. *See Bowman*, 569 S.W.3d at 223.

Marburger has not established that Glen conveyed any interest to him. Thus, the evidence supporting the trial court's finding was not so weak as to make the finding clearly wrong and manifestly unjust. *See id.* at 224. Accordingly, we hold that the trial court did not err by finding that Guest and Parker each owned an undivided 1/6 interest in the subject property.

We overrule Marburger's sole appellate issue.

## Conclusion

We affirm the judgment of the trial court.


David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.