**Opinion issued June 25, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-22-00412-CV**

———————————

**ADNAN KHALID JAFAR, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF BEACH & BEACHES, INC. DBA PORT SHAMROCK,** Appellant

**V.**

**BEACH & BEACHES, INC. DBA PORT SHAMROCK, MEHBOOB ALI MOHAMMED, SARFARAZ MOHAMMED, AND ALIAKBAR MOHAMMED,** Appellees

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-47968**

---

## MEMORANDUM OPINION

Adnan Khalid Jafar appeals the trial court's judgment ordering him to sell his interest in a gas station and convenience store ("Port Shamrock"),[1] which he jointly purchased with Beach & Beaches, Inc. ("Beaches"), to his former business partner Mehboob Ali Mohammed. Jafar contends that the pleadings do not support the trial court's judgment; Port Shamrock is the same entity as Beaches, which he owns together with Mehboob; his interest in Port Shamrock was undervalued; the trial court improperly awarded attorney's fees; Port Shamrock should have been sold instead of partitioned by sale of Jafar's interest to Mehboob; the amount he was to receive from the partition was reduced by improper offsets; and other offsets should have been applied to reduce any award against him.

We affirm the trial court's judgment under the Texas Theft Liability Act, on ownership of Port Shamrock and Beaches and their status as separate entities, and on attorney's fees. But we reverse and remand the issues of dissolution of the partnership, determination of value, partition of Port Shamrock and the land it sits on, and credits and offsets for further proceedings.

### Background

In March 2005, Jafar and Mehboob jointly purchased Port Shamrock—a gas station and convenience store business. That same month, Mehboob incorporated

---

[1] Throughout trial, the parties referred to "Port Shamrock" as "the business."

Beaches and then prepared an amended purchase agreement listing Jafar and Beaches as Port Shamrock's buyers. Beaches first leased the land Port Shamrock was located on, with the lease naming Beaches as the sole tenant, and later purchased the land in October 2006 for $445,000.

Jafar and Mehboob had a falling out. In February 2016, Jafar stopped operating Port Shamrock. Five months later, Jafar, individually and derivatively on behalf of Beaches, sued Beaches, Mehboob, and Mehboob's two sons (collectively, "Appellees") for breach of fiduciary duty, fraud, conversion, and conspiracy. Appellees answered, and later, Beaches and Mehboob counterclaimed against Jafar. They sought to "recover any and all sums which [Jafar] improperly and wrongfully misappropriated from [Port Shamrock]," "dissolve [their] relationship" with Jafar, and partition Port Shamrock and the land "in accordance with each party's interest."

The case proceeded to a bench trial. After Jafar rested, the trial court rendered judgment for Appellees on all Jafar's claims and for Beaches and Mehboob on their counterclaims. The trial court awarded Beaches and Mehboob damages for Jafar's misappropriation of funds and attorney's fees. The trial court also judicially dissolved "the partnership" between Jafar and Mehboob and ordered that the "business known as Port Shamrock and the real property" be equitably partitioned. The trial court found that Jafar owned 49% of Port Shamrock and 15% of the land, while Mehboob owned 51% of Port Shamrock and 85% of the land. Concluding that

3

neither Port Shamrock nor the land could be partitioned in kind and that an order "compelling the sale of the property would be futile," however, the trial court ordered that Mehboob could purchase "Jafar's interest in both [Port Shamrock] and the real property for the sum of $142,368.16." The trial court allowed the "total amount of all judgments" awarded to Mehboob to "offset" the purchase price, authorizing Mehboob to buy Jafar's interest for the sum of $6,578.50.[2]

## Texas Theft Liability Act

The trial court awarded Beaches and Mehboob $50,000 in damages and $4,120.50 in attorney's fees on their misappropriation of funds claim under the Texas Theft Liability Act ("TTLA"). *See* TEX. CIV. PRAC. & REM. CODE § 134.005. Jafar contends that Beaches and Mehboob cannot recover under the TTLA because (1) they did not plead a claim; (2) any claim is time barred; and (3) there is no evidence of damages.

### A.    Sufficiency of the Pleadings

#### 1.    Law

Under the TTLA, a person who commits theft is liable for the damages resulting from the theft. TEX. CIV. PRAC. & REM. CODE § 134.003(a). Theft is the unlawful appropriation of property as described in certain sections of the Texas Penal Code, including Section 31.03. *Id.* § 134.002(2). A person commits an offense

---

[2]    The trial court adopted findings of fact and conclusions of law.

under Section 31.03 "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1).

Texas follows a fair notice pleading standard. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); *see* TEX. R. CIV. P. 47 (pleadings must contain "a short statement of the cause of action sufficient to give fair notice of the claim involved"). The opposing party has fair notice when the nature and basic issues of the claim and the type of evidence that might be relevant can be understood from the pleading. *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 896. We liberally construe pleadings in the pleader's favor unless the opposing party specially excepts to the pleading. *Id.* at 897.

"Special exceptions may be used to challenge the sufficiency of a pleading." *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998); TEX. R. CIV. P. 91. Their purpose is to compel clarification of pleadings when the pleadings are not clear or sufficiently specific or fail to plead a cause of action. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). "An opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment." *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897. If the opposing party does not specially except to a pleading defect, the defect is waived. *See* TEX. R. CIV. P. 90; *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323,

345–46 (Tex. 2011); *see also Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982) (party waived any defect by failing to specially except to opposing party's pleading).

### 2. Analysis

Beaches and Mehboob counterclaimed "to recover any and all sums which [Jafar] improperly and wrongfully misappropriated from [Port Shamrock]." While they asked for "reasonable attorney['s] fees" and any other relief to which they were entitled "both in law and equity," Beaches and Mehboob did not specify any statute entitling them to such relief. Without a pleading specifically referencing the TTLA, Jafar says, the trial court could not treat the misappropriation counterclaim as arising under the TTLA. We disagree.

Beaches and Mehboob pleaded a claim to recover "improper[ly] and wrongful[ly]" misappropriated funds from Jafar. Unlawful appropriation or misappropriation is an element of a cause of action under the TTLA. *See Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 287 (Tex. App.—Tyler 2021, pet. denied) (explaining that TTLA shares an element with common law misappropriation). The TTLA also allows recovery of attorney's fees, which Beaches and Mehboob requested as part of their counterclaim. TEX. CIV. PRAC. & REM. CODE § 134.005(b). That they failed to identify the TTLA is without consequence. *See Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897.

6

The record does not show that Jafar filed special exceptions challenging Beaches and Mehboob's counterclaim requesting fees for misappropriation or seeking to clarify the counterclaim's statutory basis.[3] *See id.* (pleadings are liberally construed in pleader's favor unless opposing party specially excepts to pleading). Any pleading defect on this issue is therefore waived. *See Italian Cowboy Partners*, 341 S.W.3d at 346.

We overrule this issue.

## B.    Statute of Limitations

### 1.    Law

Limitations is an affirmative defense that must be specifically pleaded and proved. *See* TEX. R. CIV. P. 94; *Massey v. Columbus State Bank*, 35 S.W.3d 697, 700 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). A party asserting an affirmative defense in a bench trial must request supportive findings to avoid waiver on appeal. *Sears, Roebuck & Co. v. Nichols*, 819 S.W.2d 900, 907 (Tex. App.—Houston [14th Dist.] 1991, writ denied). When the trial court makes fact findings that do not establish any element of a defense, the party relying on the defense must request additional findings to avoid waiver of the defense on appeal. *Id.*

---

[3]    While Jafar filed special exceptions to Beaches and Mehboob's misappropriation counterclaim, he did so on other grounds: seeking to clarify the time-period involved, the type of mismanagement alleged, and the authority for anyone other than Mehboob to assert the claim. Jafar did not seek clarification on the statutory authority for the counterclaim or recovery of fees. It is unclear from the record whether the trial court ruled on the special exceptions.

Additionally, the appellant must present a record that is sufficient to show the trial court's error. *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (appellant must bring forth sufficient record on appeal).

## 2. Analysis

Jafar pleaded the affirmative defense of limitations. *See* TEX. R. CIV. P. 78 (defining plaintiff's pleadings as original petition and such supplemental petitions as are necessary); TEX. R. CIV. P. 81 ("When the defendant sets up a counter claim, the plaintiff may plead thereto under rules prescribed for pleadings of defensive matter by the defendant, so far as applicable."); TEX. R. CIV. P. 94 (listing limitations as affirmative defense). But he did not raise his limitations defense at trial, he did not request findings on limitations, and there is no mention of the defense in the trial court's findings and conclusions. *See Nichols*, 819 S.W.2d at 907. Jafar also did not request additional or amended findings.[4] *Id.* Jafar thus did not preserve his complaint. *See* TEX. R. APP. P. 33.1(a); *see also Wheelock v. Trim Elec., Inc.*, No. 01-12-00475-CV, 2013 WL 3233239, at *7 (Tex. App.—Houston [1st Dist.] June

---

[4] Jafar filed a "Motion to Alter or Amend Judgment in the Alternative, Motion for New Trial," but he did so one month after the trial court's findings and conclusions. The motion did not request any "specified additional or amended findings or conclusions," as required. *See* TEX. R. CIV. PROC. 298 (request for additional or amended findings of fact and conclusions of law "must be made within ten days after the court sends the original findings and conclusions").

8

25, 2013, no pet.) (mem. op.) ("When a trial court's findings do not address a ground of recovery, the party relying on that ground must request additional findings in proper form or else any complaint about the unmentioned ground is waived."); *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 785 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (to avoid waiver, party asserting affirmative defense in bench trial must request findings in support of defense and, when findings do not establish any element of defense, must request additional findings).

We overrule Jafar's statute of limitations issue.

## C. Damages

Jafar contends that there is insufficient or no evidence to support damages under the TTLA. We treat this issue as challenging the legal and factual sufficiency of the evidence.

### 1. Law

In a bench trial, findings of fact have the same force and dignity as a jury's verdict, and we may review the trial court's findings of fact for legal and factual sufficiency under the same standards we apply to jury verdicts. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Green v. Alford*, 274 S.W.3d 5, 23 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

In conducting a sufficiency review, we consider the evidence in the light most favorable to the challenged findings and indulge every reasonable inference that

supports them. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *George Joseph Assetts, LLC v. Chenevert*, 557 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). When an appellant attacks a finding on an issue on which he did not have the burden of proof, he must show that no evidence supports the adverse finding. *Id.* Evidence is legally insufficient to support a finding if (1) there is a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

When reviewing findings for factual sufficiency, we consider and weigh all the evidence and will "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 653 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). In assessing the evidence, we may not pass on the credibility of the witnesses or substitute our judgment for that of the factfinder; instead, the trial court,

as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to afford their testimony. *City of Keller*, 168 S.W.3d at 819; *Gunn v. McCoy*, 554 S.W.3d 645, 665 (Tex. 2018).

"We review a trial court's conclusions of law de novo, and we will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence." *See Cooke v. Morrison*, 404 S.W.3d 100, 107 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A party may not challenge legal conclusions for factual sufficiency, but the reviewing court may determine the correctness of legal conclusions drawn from facts. *Id.* If the reviewing court determines the trial court erred in its legal conclusions but rendered a proper judgment, reversal is not required. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

### 2. Analysis

The trial court found that Jafar "wrongfully misappropriated a minimum of $50,000.00" from Port Shamrock and awarded Beaches and Mehboob $50,000.00 in damages. *See* TEX. CIV. PRAC. & REM. CODE §§ 134.003, .005(a)(1) (authorizing recovery of actual damages from person who commits theft).

Jafar testified that when he started working at Port Shamrock, he earned $8.00 but his pay later increased to $11.00 per hour. While working at Port Shamrock, Jafar wrote several checks to himself and made cash withdrawals totaling over $100,000, allegedly on Mehboob's instruction. Port Shamrock's accountant testified

11

that tax documents showed that in 2012, 2013, and 2016—when Jafar operated the business alone—$545,000 went missing. Jafar denied taking any money from Port Shamrock, but the trial court was free to disbelieve his explanation of why he wrote checks to himself from Port Shamrock's account. *See Townsend v. Vasquez*, 569 S.W.3d 796, 807–08 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (factfinder is sole judge of witness credibility and weight of testimony).

Also, Jafar does not challenge the trial court's findings—findings of fact 18 through 23—that $545,000 went missing while he exclusively managed and operated Port Shamrock, from 2005 until February 2016, and that no money went missing after Mehboob took over. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (appellate court is bound by unchallenged fact findings unless the contrary is established as matter of law or no evidence supports finding). We thus conclude the evidence is legally and factually sufficient to support the damages findings. *See Levine*, 448 S.W.3d at 653; *City of Keller*, 168 S.W.3d at 822.

As for the conclusion of law stating that Mehboob is entitled to a judgment of $50,000 on his counterclaim against Jafar, we have stated that the above findings of fact are supported by the record. These findings support the trial court's conclusion of law based on the evidence showing that Jafar appropriated property without consent and with intent to deprive the owner of such property. *See City of Keller*, 168 S.W.3d at 827; *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App.

12

1995) (intent may be inferred from circumstantial evidence surrounding the incident including accused's acts, words, and conduct).

We overrule Jafar's damages issue.

## Port Shamrock

Jafar contends that the trial court erred by treating Port Shamrock as a separate entity from Beaches, despite judicial admissions by Appellees that the entities were the same, their failure to plead any defenses to that effect, and conclusive evidence of the entities' sameness.

## A.     Judicial Admissions and Affirmative Defenses

Jafar argues that by submitting filings on behalf of "Beach and Beaches, Inc. dba Port Shamrock," Appellees judicially admitted that Beaches was the same entity as Port Shamrock.

### 1.     Law

A judicial admission must be a clear, deliberate, and unequivocal statement, and occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary. *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 905 (internal quotations omitted).

### 2.     Analysis

While Appellees identified "Beach & Beaches, Inc. DBA Port Shamrock" as a defendant in their filings, their answer denied Jafar's allegation that he had a stake

13

in Beaches. And in their counterclaim, Beaches and Mehboob distinguished between Port Shamrock ("the business") and Beaches. Appellees' inclusion of the name "Beach & Beaches, Inc. DBA Port Shamrock" in their filings is not a clear and unequivocal statement that qualifies as a judicial admission. *See Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 905.

Jafar also contends that Appellees cannot question his capacity to sue or his description of the business because they failed to plead that he lacked capacity to sue derivatively on behalf of Beaches, that there was a defect in parties, or that Beaches was not incorporated as alleged. But Appellees disputed that Jafar is an owner of Beaches, and the trial court found that Jafar lacked standing to bring suit on behalf of Beaches because he was not a shareholder.

An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1 (h), (i); *see Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). An appellant waives an issue on appeal if he does not adequately brief that issue by providing supporting arguments, substantive analysis, and appropriate citations to authorities and to the record. *See Tesoro Petroleum Corp.*, 106 S.W.3d at 128. This is not accomplished "by merely uttering brief conclusory statements, unsupported by legal citations," so this complaint is waived. *Id.*

14

We overrule Jafar's issue.

## B.    Sameness Evidence

Jafar argues that the evidence at trial showed as a matter of law that Port Shamrock is the same entity as Beaches. We apply the legal sufficiency standard set out above, noting that Jafar had the burden to prove his own claim and so must show that the evidence conclusively established all vital facts in support of the claim. *See Orr v. Walker*, 438 S.W.3d 766, 768 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)).

Although Jafar argues that the trial court's finding that Port Shamrock was a separate entity from Beaches is unsupported, the evidence shows otherwise. On March 15, 2005, Jafar and Mehboob entered into a written agreement to buy Port Shamrock. One week later, on March 22, Mehboob incorporated Beaches. Three days after Beaches' incorporation, Jafar and Mehboob amended the Port Shamrock purchase agreement. The amended purchase agreement listed Beaches and Jafar as the buyers. Around the time of purchase, Mehboob and Jafar agreed that Mehboob would have a 51% ownership interest and Jafar would have a 49% ownership interest in Port Shamrock.

This evidence supports the trial court's finding that Port Shamrock and Beaches were separate entities. First, the amended purchase agreement lists Jafar and Beaches as the buyers of Port Shamrock. Second, tax records showed that

15

Mehboob, not Jafar, owned Beaches. Third, testimony reflected that Port Shamrock provided partial funding to Beaches to buy the land Port Shamrock was located on. Fourth, Port Shamrock had accounting records showing a balance sheet for its operation.

That Jafar points out some contradictory evidence does not carry his burden. *See Dow Chem. Co.*, 46 S.W.3d at 241 (legal sufficiency issue should be sustained only if contrary proposition is conclusively established); *see also Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 691 (Tex. 1989) (when some evidence supports the challenged finding, our inquiry on that issue need go no further).

We overrule Jafar's issue.

**Ownership of Beaches**

Jafar argues that the evidence shows that he owned 49% of Beaches and its assets, and thus the trial court erred in not awarding him his proportionate share. We construe this as a challenge to the legal and factual sufficiency of the evidence, and we again apply the sufficiency standards of review. *See Orr*, 438 S.W.3d at 768.

The trial court found that "[n]o stock in Beach & Beaches, Inc. has ever been issued to any person and no entry reporting any stock issuance to any person has ever been registered in the share transfer records maintained by the corporation." It also concluded that because Jafar was "never issued stock in [Beaches] and because no entry reporting any stock issuance to [Jafar] has ever been registered in the share

16

transfer records maintained by [Beaches], [Jafar] is not a shareholder of the corporation."

Jafar testified that while he was never issued any stock, he understood that he owned half of Beaches because he invested money equally with Mehboob. But Jafar's testimony revealed that he was referring to buying "the store"—Port Shamrock—when he invested equally with Mehboob. Jafar admitted that he owned 49% of Port Shamrock and Mehboob owned 51%. There are also conflicting tax records indicating at times that Jafar owned some of Beaches and that Mehboob owned all of Beaches.

Proving ownership without stock certificates depends on the evidence presented, including the nature of the parties, the nature of their relationship, and their representations to each other. *See generally Willis v. Donnelly*, 199 S.W.3d 262, 277–78 (Tex. 2006) (refusing to recognize shareholder status for experienced businessman working under both written agreement to transfer stock and oral agreement to postpone delivery of stock); *Greenspun v. Greenspun*, 194 S.W.2d 134, 137 (Tex. Civ. App.—Fort Worth), *aff'd*, 198 S.W.2d 82 (Tex. 1946) (party claiming transfer of stock must show "whether the minds of transferor and transferee met, whether there was an intention that the stock should then and there be vested in the transferee, and whether there were acts in the nature of a symbolical delivery of the property"); *Rio Grande Cattle Co. v. Burns*, 17 S.W. 1043, 1044–45 (Tex.

17

1891) (person can be shareholder without possessing stock certificates if person is entitled to receive stock, but company refuses to issue stock certificates despite demand to do so).

While it is possible to prove ownership without stock certificates, Jafar did not present enough evidence to show that Mehboob intended to make Jafar a 49% shareholder of Beaches. The trial court was free to disbelieve Jafar's testimony that he believed he was an equal owner of Beaches. *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (factfinder is sole judge of witness's credibility).

Having reviewed the evidence in the light most favorable to the trial court's fact finding, we conclude that the evidence is legally sufficient to support the finding that Jafar did not hold stock in Beaches. *See City of Keller*, 168 S.W.3d at 810. We have also reviewed the evidence related to this same finding under the factual sufficiency standard and conclude that it is not contrary to the overwhelming weight of the evidence. *See Cain*, 709 S.W.2d at 176.

Because the facts do not show that Jafar is an owner of Beaches, we uphold the trial court's challenged conclusion. *See Cooke*, 404 S.W.3d at 111.

### Attorney's Fees

In his third, fourth, and fifth issues, Jafar contends that the trial court erred in awarding attorney's fees to Beaches and Mehboob. The trial court found that they

had incurred $82,410.00 in attorney's fees but awarded only $78,289.50. The award equals 90% of the total fees for defending Jafar's derivative action and 5% for the counterclaim alleging misappropriation of funds.[5]

## A. Derivative Action

In his third issue, Jafar argues that it was error to award attorney's fees for the defense of his derivative action because he reasonably believed that he was a shareholder of Beaches and because Beaches and Mehboob did not plead that he lacked capacity.

### 1. Standard of Review

We review a trial court's award of fees in a derivative action for an abuse of discretion. *Moody v. Nat'l W. Life Ins.* Co., 634 S.W.3d 256, 283 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Under the abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error; they are relevant factors in assessing whether the trial court abused its discretion. *In re J.J.G.*, 540 S.W.3d 44, 55 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). "Whether a case was filed without reasonable cause or for an improper purpose is a question of law for the court." *Moody*, 634 S.W.3d at 281. We consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its

---

[5] The remaining 5% that went unawarded was for the counterclaim to dissolve the parties' partnership and partition the partnership's assets.

application of discretion. *In re J.J.G.*, 540 S.W.3d at 55. When there is some evidence to support the trial court's decision, there is no abuse of discretion. *Moody*, 634 S.W.3d at 283. A trial court does not abuse its discretion simply by deciding a matter differently than an appellate court would. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). The appellate court may not substitute its own judgment for the trial court's judgment. *Bowie Mem. Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam).

## 2. Analysis

A party may recover attorney's fees only if specifically provided for by statute or contract. *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). The availability of statutory attorney's fees is a question of law that can be raised in a post-judgment motion. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999).

The Texas Business Organizations Code states that, "[o]n termination of a derivative proceeding," the trial court "may order:"

> the plaintiff to pay expenses the corporation or other defendant incurred in investigating and defending the proceeding if the court finds the proceeding has been instituted or maintained without reasonable cause or for an improper purpose[.]

TEX. BUS. ORGS. CODE § 21.561(b)(2).

A plaintiff seeking to derivatively enforce the rights of a corporation must be a shareholder. *See Ritchie v. Rupe*, 443 S.W.3d 856, 880–81 (Tex. 2014) (shareholders in closely held corporation can bring derivative action); *Somers ex rel.*

*EGL, Inc. v. Crane*, 295 S.W.3d 5, 15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also Neff v. Brady*, 527 S.W.3d 511, 521 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (shareholder must bring derivative suit in corporation's name to recover for wrongs done to corporation). When standing has been conferred by statute, the statute serves as the proper framework for a standing analysis. *Cernosek Ents., Inc. v. City of Mont Belvieu*, 338 S.W.3d 655, 663 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Gilbreath v. Horan*, 682 S.W.3d 454, 488 (Tex. App.—Houston [1st Dist.] 2023, pet. denied).

Because Jafar is not a shareholder of Beaches, he does not "fall[] within the category of claimants upon whom the Legislature [has] conferred standing." *Nephrology Leaders & Assocs. v. Am. Renal Assocs. LLC*, 573 S.W.3d 912, 916 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("[C]ourts must determine whether a particular plaintiff has established that he has been injured or wronged within the parameters of the statutory language."). The trial court found that Jafar "is not currently a shareholder in [Beaches] and has never been a shareholder at any time relevant to this proceeding, [so] the derivative action which he filed was instituted and maintained without reasonable cause." Because evidence supports the finding, the trial court was justified in awarding attorney's fees. *See Moody*, 634 S.W.3d at 283.

Jafar also references his prior argument that Appellees had to plead that he lacked capacity to bring suit. But again, Jafar's briefing does not provide appropriate citations to authorities and to the record to support his contention. TEX. R. APP. P. 38.1 (h), (i); *see Tesoro Petroleum Corp.*, 106 S.W.3d at 128. Instead, he offers only brief conclusory statements. Because Jafar did not adequately brief this issue by providing supporting arguments, substantive analysis, and appropriate citations to authorities and the record, this complaint is waived. *See Tesoro Petroleum Corp.*, 106 S.W.3d at 128.

We overrule Jafar's derivative action attorney's fees issue.

**B.    Texas Theft Liability Act**

Jafar contends that the trial court erred in awarding attorney's fees under the TTLA because they were not pleaded and there was insufficient or no evidence of fees because Beaches and Mehboob did not segregate the fees.

**1.    Standard of Review**

The availability of attorney's fees under a statute is a question of law. *Leteff v. Roberts*, 555 S.W.3d 133, 140 (Tex. App.—Houston [lst Dist.] 2018, no pet.). We review questions of law de novo. *Id.* at 137.

## 2. Analysis

Beaches and Mehboob contend that they brought their "misappropriation" counterclaim under the TTLA. The trial court awarded them $4,120.50 in attorney's fees under the statute.

Jafar argues that Beaches and Mehboob did not include this claim in their counterclaim, thus depriving him of fair notice of the relief sought. *See Stoner v. Thompson*, 578 S.W.2d 679, 682–83 (Tex. 1979). But fair notice of a claim is given if the opposing party can understand from the pleading the nature and basic issues of the claim and the type of evidence that might be relevant. *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 896. Jafar could have filed special exceptions compelling Appellees to clarify the basis of their attorney's fees request, but he did not do so.[6] *See Sonnichsen*, 221 S.W.3d at 635. Absent special exceptions, we construe pleadings liberally in favor of the pleader. *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897. And as we previously concluded, any pleading defect on the underlying TTLA claim issue is waived.

Here, Beaches and Mehboob brought a counterclaim against Jafar for misappropriation but did not specify a statute that entitled them to attorney's fees.

> Counterplaintiff brings this action; to recover any and all sums which Counterdefendant improperly and wrongfully misappropriated from the business.

---

[6] As stated, Jafar's special exceptions to the TTLA counterclaim did not address the statutory authority for the attorney's fees request.

23

. . .

It was necessary for Counterplaintiffs to bring this Counterpetition to present and to prosecute the claims asserted herein. Counterplaintiffs should be awarded their reasonable attorney fees for the services of their attorney.

WHEREFORE Counterplaintiffs pray that the Court, after notice and hearing or trial, enter judgment in favor of Counterplaintiffs, dissolve the business relationship existing between Counterplaintiffs and Counterdefendants, enter its order partitioning both the business and real property and award Counterplaintiffs their costs of court, attorney's fees, and such other and further relief as to which Counterplaintiffs may show themselves to be justly entitled both in law and in equity.

Beaches and Mehboob argue that their pleadings were general enough to allow recovery of attorney's fees on any legal basis presented in the record despite not citing a specific rule or statute as the sole ground for a fees recovery. *Whallon v. City of Hous.*, 462 S.W.3d 146, 165 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (if party pleads facts which, if true, entitles party to relief sought, party "need not specifically plead the applicable statute in order to recover [attorney's fees] under it"); *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 660 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (general pleadings are sufficient to support recovery of fees under any applicable theory, but if party pleads specific ground, party is "limited to that ground and cannot recover attorney's fees on another, unpleaded ground."). When the opposing party fails to specially except to a pleaded request for attorney's fees, courts construe the pleading

24

requesting fees liberally in favor of the pleader. *Whallon*, 462 S.W.3d at 165; *see Patriot Contracting, LLC v. Shelter Prods., Inc.*, 650 S.W.3d 627, 656 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (pleading supported request for attorney's fees in judicial foreclosure proceeding even though parties did not invoke specific statute authorizing fees when parties sought judicial foreclosure, generally requested attorney's fees, and trial court did not sustain special exceptions).

Here, Beaches and Mehboob pleaded the basis for their misappropriation claim and requested attorney's fees as part of their pleadings. We conclude their claim for attorney's fees is sufficiently general to permit them to argue any available legal basis to support the award of such fees. *See Smith v. Deneve*, 285 S.W.3d 904, 916–17 (Tex. App.—Dallas 2009, no pet.) (party's general pleadings allowed party to rely on any applicable provisions of law to support award of attorney's fees when party did not cite to any specific rule or statute as sole ground for recovery of fees).

We overrule Jafar's TTLA attorney's fees issue.

## C. Segregation of Fees

Jafar argues that because Beaches and Mehboob have failed to segregate their attorney's fees amongst each claim they are not permitted to recover those fees. But Beaches and Mehboob did segregate fees between the counterclaim and the remaining claims. For the counterclaims, Beaches and Mehboob segregated the fees for the TTLA action from the dissolution action. But they did not segregate the

25

remaining claims: the derivative action claims brought by Jafar on behalf of Beaches and the claims brought by Jafar individually. So, we now turn to our review of whether the attorney's fees for those remaining claims required segregation.

### 1. Standard of Review

"Because attorney's fees are recoverable only when provided for by statute or the parties' contract, a fee claimant must segregate attorney's fees that are recoverable from those that are not." *Hillegeist Fam. Enters., LLP v. Hillegeist*, 667 S.W.3d 349, 357 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006)). The need to segregate attorney's fees is a question of law, and the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Chapa*, 212 S.W.3d at 312–13; *Khoury v. Tomlinson*, 518 S. W.3d 568, 581 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). The party seeking to recover attorney's fees must show that fee segregation is not required. *Hellegeist Fam. Enters.*, 667 S.W.3d at 357.

### 2. Analysis

If any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. *Chapa*, 212 S.W.3d at 313. "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14.

26

"[T]o meet a party's burden to segregate its attorneys' fees, it is sufficient to submit to the fact-finder testimony from a party's attorney concerning the percentage of hours related solely to a claim for which fees are not recoverable." *RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 453 (Tex. App.—Dallas 2011, no pet.); *Young v. Dimension Homes, Inc.*, No. 01-14-00331-CV, 2016 WL 4536407, at *10 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, no pet.) (mem. op.) ("[A]n attorney can satisfy his evidentiary burden by presenting evidence of unsegregated attorney's fees and a rough percentage of the amount attributable to the claims for which fees are not recoverable.").

Jafar argues that Beaches and Mehboob had to segregate fees between them. But Jafar has not provided this Court with citations to authorities to support this contention, so it is waived.[7] *See* TEX. R. APP. P. 38.1(i); *Banakar v. Krause*, 674 S.W.3d 564, 575 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("A failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal.").

This leaves us with reviewing the segregation of fees between recoverable and unrecoverable claims. *See Chapa*, 212 S.W.3d at 313. As evidence of their attorney's

---

[7] Jafar cites to *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1 (Tex. 1991), but that case is inapposite. *Sterling* dealt with when a prevailing party was trying to recover attorney's fees where there were multiple opposing parties and one opposing party had settled. *Id.* at 10–11. Here, no argument has been raised that there are multiple parties to recover from.

fees, Beaches and Mehboob offered the testimony of one of their attorneys and his billing records. Counsel testified that the reasonable and necessary amount of attorney's fees incurred by Beaches and Mehboob was $82,410. Jafar cross-examined counsel on whether he segregated recoverable from unrecoverable claims. Counsel responded that he had provided a percentage division of his work on the derivative action and on the counterclaim. Counsel also testified that defending against the derivative claim for conspiracy, which involved all claims raised by Jafar, meant that he could not segregate his work defending against Jafar's claims for one defendant as opposed to the others. This included the fraud claim that was a direct claim by Jafar against Mehboob and not a derivative claim on behalf of Beaches.

Because Jafar brought a derivative action without reasonable cause, Beaches and Mehboob may recover attorney's fees for defending the derivative claims. *See* TEX. BUS. ORGS. CODE § 21.561(b)(2). Jafar also pleaded a direct claim of fraud, which does not permit the recovery of attorney's fees and would need to be segregated. *See Chapa*, 212 S.W.3d at 311. But attorney's fees do not require segregation when the claims arise from the same transaction and counsel's legal services advance both recoverable and unrecoverable claims. *Id.* at 313–14 (discrete legal services that advance both recoverable and unrecoverable claims need not be segregated). The pleadings on the derivative conspiracy claim alleged:

28

Defendants in combination with one another, agreed to enter an agreement to conspire to accomplish an unlawful purpose or lawful purpose by unlawful means detailed in the allegations noted above. The Defendants acted specifically with the intent to harm and defraud Beach & Beaches, Inc. DBA Port Shamrock and Jafar from his ownership interest in the business. Additionally, the Defendants acted in concert to misappropriate funds owned by Beach & Beaches, Inc. DBA Port Shamrock. To accomplish the object of their agreement, the Defendants committed an overt and unlawful act of misappropriating funds from Beach & Beaches, Inc. DBA Port Shamrock and usurping the stock owned by Jafar, The agreement by the Defendants caused injury to Beach & Beaches, Inc. DBA Port Shamrock and Jafar.

Beaches and Mehboob's counsel testified that the conspiracy claim caused the defense of one defendant to become the defense of all defendants, so the billing on Jafar's claims could not be segregated. Beaches and Mehboob also provided a billing spreadsheet describing the legal services performed and detailing the dates, hours spent, and hourly rate. They thus presented enough evidence to support a presumption of reasonable and necessary attorney's fees. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498–99 (Tex. 2019). Because the conspiracy claim implicated all defendants for the conduct of any of them, the work for the recoverable and unrecoverable claims were so intertwined that they need not have been segregated. *See Chapa*, 212 S.W.3d at 312–14. Beaches and Mehboob also properly raised that it was not just intertwined facts that made unrecoverable fees recoverable but that the nature of the claims meant that counsel's legal services advanced both a recoverable and unrecoverable claims. *Id.* at 313 (intertwined facts

29

alone do not make unrecoverable fees recoverable, discrete services provided must have advanced both types of claims).

We overrule Jafar's segregation issue.

**Partitioning Port Shamrock and the Land**

Jafar complains that the trial court erred in partitioning Port Shamrock and the land it sits on by forced sale from Jafar to Mehboob, rather than ordering a sale and division of the proceeds. The trial court did not specify the statutory basis for the partition, and Jafar did not request findings on this point. Two possible bases for partition have been suggested by the parties—the Texas Property Code and the Texas Business Organizations Code. *See* TEX. PROP. CODE § 23.001; TEX. BUS. ORGS. CODE § 11.314. We apply the de novo standard of review to the trial court's legal conclusions. *See BMC Software Belgium*, 83 S.W.3d at 794.

**A.    Law**

A joint owner or claimant of real property or an interest in real property "may compel a partition of the interest or the property among the joint owners or claimants." TEX. PROP. CODE § 23.001. If the trial court determines property is incapable of partition in kind, then the trial court must order partition by sale. TEX. R. CIV. P. 770; *See Bowman v. Stephens*, 569 S.W.3d 210, 221 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

30

Section 11.314 of the Texas Business Organizations Code authorizes trial courts to order the winding up and termination of a domestic partnership on the application of a partner if it finds that "another owner has engaged in conduct relating to the entity's business that makes it not reasonably practicable to carry on the business with that owner." TEX. BUS. ORGS. CODE § 11.314(2).

## B.     Analysis

Jafar is correct that under the Texas Property Code, "[a] joint owner or claimant of real property or an interest in real property . . . may compel a partition of the interest or the property among the joint owners or claimants." TEX. PROP. CODE § 23.001. And that when a partition in kind is not possible, the trial court must order a partition by sale. *See* TEX. R. CIV. P. 770; *see also Bowman*, 569 S.W.3d at 220. Thus, the trial court's order of partition of Port Shamrock and the land by compulsory sale from Jafar to Mehboob is not supported under this legal theory.

Mehboob argues that partitioning Port Shamrock and the land by forced sale to him is permitted under Sections 11.314 and 11.054 of the Texas Business Organizations Code. *See Guar. Cnty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986) (per curiam) (judgment that is correct on any legal theory before trial court will be upheld even if trial court's reasoning is erroneous); *see also Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897 (pleadings are construed liberally

31

in pleader's favor unless opposing party specially excepts). The counterclaim to dissolve the partnership between Jafar and Mehboob states:

> Additionally, Counterplaintiff brings this action to dissolve his relationship with Counterdefendant and to partition the business and to partition the land in accordance with each party's interest. In that connection, Counterplaintiff, Mohammed would show that he contributed more than 50% of the purchase price of the business and he contributed all of the purchase price of the land and building, in the event that it is established that Counterplaintiff was reimbursed for any portion of such purchase price then the parties' interests should be adjusted accordingly.

The trial court ordered that the partnership between Jafar and Mehboob "be and is hereby judicially dissolved." Section 11.314 authorizes the trial court to order the winding up and termination of a domestic partnership on the application of a partner if it finds that "another owner has engaged in conduct relating to the entity's business that makes it not reasonably practicable to carry on the business with that owner." TEX. BUS. ORGS. CODE § 11.314(2).

When the trial court's findings of fact address a ground of recovery, but omit an element, we may infer the missing element because the judgment is presumed valid. *See* TEX. R. CIV. P. 299; *see also Hailey v. Hailey*, 176 S.W.3d 374, 383–84 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Vickery v. Comm'n for Law. Discipline*, 5 S.W.3d 241, 251–53 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (presumptive validity of judgment may apply even stronger in bench trial). Here, the trial court found that Jafar "wrongfully misappropriated a minimum of

$50,000.00 from the business of Port Shamrock." So, there is support for the trial court's dissolution of the partnership under section 11.314(2) of the Texas Business Organizations Code.

Next, we review whether section 11.054 permits the trial court's order of partition. It provides that, "[s]ubject to the other provisions of the code," in supervising the winding up process, the trial court may "make any other order, direction or inquiry that the circumstances may require." TEX. BUS. ORGS. CODE § 11.054(3). Mehboob contends that while Rule 770 provides that the trial court should order a sale when a fair and equitable division of real estate cannot be made, TEX. R. CIV. P. 770, no similar provision appears in the Texas Business Organizations Code. *See* TEX. BUS. ORGS. CODE § 402.005(a)(l). But that is incorrect.

The trial court ordered the winding up and termination of the "partnership" between Jafar and Mehboob. *See id.* § 11.314(2). Winding up of a domestic entity is required when a court orders the "winding up, dissolution, or termination of the domestic entity." *Id.* § 11.051(5). Once an event requiring the winding up of a domestic entity occurs, the owners are required to, "as soon as reasonably practicable, wind up the business and affairs of the domestic entity." *Id.* § 11.052(a). Section 11.052 also requires that the entity shall: "cease to carry on its business, except to the extent necessary to wind up its business; . . . [and] collect and sell its

33

property to the extent the property is not to be distributed in kind to the domestic entity's owners or members . . . ." *Id.* § 11.052(a)(1–3). Section 11.054 explicitly states that the powers it grants are "[s]ubject to the other provisions of this code[.]" *Id.* § 11.054. Construing Section 11.054 to permit the trial court to force a sale of Jafar's interests to Mehboob would directly conflict with the requirements of a winding up process under Section 11.052. *See id.* § 11.052(a)(3). So, this alternative theory for the sale of Jafar's interest in the business and land also fails.

Lastly, Mehboob argues that the Business Organizations Code provides that a person ceases to be a partner on an event of wrongful withdrawal, so the partnership has an automatic right to redeem Jafar's interest. A partnership may redeem the "interest of a partner who wrongfully withdraws" on "the completion of a particular undertaking, or the occurrence of a specified event requiring a winding up of partnership business . . . ." *See id.* § 152.602(b). A wrongful withdrawal of a partner occurs when "the partner is expelled by judicial decree under Section 152.501(b)(5)." *See id.* § 152.503(b)(3). A trial court may determine to expel a partner "on application by the partnership or another partner." *See id.* § 152.501(b)(5). But Mehboob made no claim to expel Jafar from the partnership, so that claim was not before the trial court. By Mehboob's own admission, the counterclaim was for "dissolution." "A trial court cannot enter judgment on a theory of recovery not sufficiently set forth in the pleadings or otherwise tried by consent."

34

*Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 779 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Accordingly, we sustain Jafar's issue about partitioning Port Shamrock and the land it is on. Given this resolution, we do not address Jafar's issues on whether offsets and credits should be considered in partitioning Port Shamrock and the land. *See* TEX. R. APP. P. 47.1.

## Scope of Remand

Having found reversible error, we now consider the scope of remand. *See* TEX. R. APP. P. 44.1(b) ("If the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error.").

Because the trial court's dissolution of the partnership, determination of value, partitioning of partnership assets, and credits or offsets awarded are all interwoven, they are not separable without unfairness. *See Downing v. Burns*, 348 S.W.3d 415, 428–29 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (remanding for new trial on claims that were not separable without unfairness to the parties); *see also* TEX. R. APP. P. 44.1(b). We thus reverse and remand those portions, but do not reverse or remand the TTLA issues, the issues on ownership of Port Shamrock and Beaches and their status as separate entities, or the attorney's fees issues.

## Conclusion

Having sustained Jafar's final issue, we reverse the trial court's judgment as to the dissolution, determination of the value, and partitioning of Port Shamrock and the land by allowing Mehboob to purchase Jafar's interest. This includes considering whether remediation costs and offsets should be applied toward Port Shamrock's and the land's division. We reverse these portions of the judgment and remand them to the trial court for further proceedings consistent with this opinion. *See* TEX. R. APP. P. 44.1(b). We affirm the remainder of the trial court's judgment.


Sarah Beth Landau
Justice

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.